No. 27,856.

THE KANSAS WHEAT GROWERS' ASSOCIATION, *Appellant,*
v. O. E. BROOKS, *Appellee.*

(263 Pac. 787.)

### SYLLABUS BY THE COURT.

AGRICULTURE—*Coöperative Marketing Agreements—Breach by Sale to Landlord in Satisfaction of Debt.* Under a marketing agreement between the parties, defendant was under an obligation to sell and deliver to plaintiff the wheat produced by him for a certain period, and it was agreed that if he sold or delivered the wheat to another in violation of his agreement the defendant would be liable to the plaintiff as liquidated damages in the sum of twenty-five cents per bushel. Defendant produced a crop of wheat which he sold to his landlord. *Held,* that he is liable in damages to the plaintiff for the crop so sold notwithstanding the proceeds of the sale were applied upon his indebtedness to the purchaser.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed February 11, 1928. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore, J. L. Weigand, R. L. NeSmith,* all of Wichita, and *Ed T. Hackney,* of Wellington, for the appellant.

*J. Graham Campbell, Ray Campbell,* both of Wichita, *E. J. Taggart* and *John B. Bradley,* both of Wellington, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Kansas Wheat Growers' Association brought this action against O. E. Brooks alleging that he had violated a marketing agreement in failing to deliver wheat produced by him upon a farm which he was operating, as he had agreed to do, and it asked a recovery of twenty-five cents per bushel of wheat produced and not delivered. The defendant admitted his membership in the association and his execution of the agreement, but alleged that the agreement was procured by false and fraudulent representations as to several matters which were relied upon by him. The matters of fraud were not sustained by the proof and were withdrawn by the court from the consideration of the jury. While plaintiff had alleged that defendant had grown a large quantity of wheat which he had failed and refused to deliver, the parties finally stipulated that the only wheat in controversy in the action was 700

Agriculture, 2 C. J. p. 998 n. 31.

bushels, his share of the crop raised by defendant in 1923. Defendant contended and testified that he was a tenant farmer and had been operating the farm of his father-in-law, B. F. Priddy, since 1920; that he bought a half interest on all the equipment and some live stock from Priddy for $2,500, the title to which was to remain in Priddy until that amount had been paid, and that nothing had been paid upon the debt. That defendant was to furnish all the necessary labor, and that each was to receive one-half of the net returns derived from the farm. Priddy, he testified, had received no rentals from the operation of the farm since it was leased to defendant in 1920, and nothing had been paid upon the equipment and live stock which defendant had purchased and was to pay for from the products of the farm. There was evidence that in September, 1923, the defendant surrendered the lease and made a settlement with Priddy, in which he turned over to Priddy all the equipment and live stock, as well as the grain grown on the farm, and had executed a bill of sale for a consideration of $2,657, that being the price or value of defendant's interest in the grain, equipment and live stock for which no payment had been made. Priddy testified that defendant's half interest in a crop of 1,400 bushels was included in this sale.

The question for decision was whether the defendant was under an obligation to deliver to the association 700 bushels of wheat which he had produced and which had been sold to Priddy. He had agreed to deliver to the association the wheat produced by him, and failing in that he agreed to pay as liquidated damages the sum of twenty-five cents per bushel of that not delivered in accordance with the agreement. In defendant's agreement with the association it was stipulated that the association would buy, and he as grower would sell to it, all wheat produced or acquired by or for him as landlord or lessor except for seed and feed. Among other provisions the agreement contained the following:

"The grower expressly warrants that he is now in a position to control said crops and has not heretofore contracted to sell, market or deliver any of his said wheat to any person, firm or corporation, except as noted at the end of this agreement. Any wheat covered by such existing contracts or crop mortgage shall be excluded from the terms hereof for the period and to the extent noted, if the lienholder refuses to permit delivery thereof."

There were notations at the end of the agreement in respect to the wheat grown the previous year and also as to the number of

acres in the crop of 1923, but there was no notation that any of the wheat was covered by such contracts as were named in the exception.

No mortgage had been executed and it was a part of the agreement that:

"If the grower places a crop mortgage upon any of his crops during the term hereof, the association shall have the right to take delivery of his wheat and to pay off all or part of the crop mortgage for the account of the grower and to charge the same against him individually."

Upon the evidence it appears that defendant was the tenant of Priddy and that the crop of wheat was raised on a fifty-fifty basis; that defendant raised 1,400 bushels of wheat in 1923, one-half of which belonged to the defendant. It was conceded by defendant as well as Priddy that the 700 bushels of wheat was sold by defendant to Priddy and the proceeds applied upon a debt which defendant owed Priddy since 1920, for an interest in the equipment and live stock sold by the latter to the former. Defendant had agreed to sell the wheat which he produced to the plaintiff. The agreement covered at least the part raised and owned by himself, and hence the sale of that portion of the wheat to another was a violation of his agreement under which he became liable to the association for twenty-five cents per bushel of the quantity sold.

The arrangement between defendant and the landlord Priddy was not committed to writing, and not even a note was executed for the equipment purchased in 1920. The obligation for the equipment sold to him by Priddy was an ordinary debt, and was not excepted from the obligation assumed to plaintiff in the marketing agreement. The admissions made by defendant as well as by his counsel in the opening statement sufficiently establishes the liability of defendant, and hence the judgment must be reversed, with the direction to enter judgment for plaintiff upon 700 bushels of wheat at the rate of twenty-five cents per bushel, amounting to $175. It is so ordered.